Is 19-1293 Doe v. School District Number 1. You may proceed, Counsel. Good morning, Your Honors. May it please the Court. Counsel. This case is about how much harassment a public school is allowed to tolerate against a child who has been sexually assaulted. Now, I'm not going to belabor the point about the standards here. Of course, the Court knows them. But the Straub case is clear that to withstand a motion to dismiss, as here, a complaint must contain enough allegations of fact to state a claim that is plausible on its face. At the very least, at this stage in the proceedings, the complaint is plausible on its face. Additionally, and importantly, under the Baker case, a court must draw all reasonable inferences from factual allegations in a light most favorable to the plaintiff. The District Court clearly failed to do that in this case. In fact, it did just the opposite and drew many inferences against the plaintiff and in favor of the defendant. What's really important here is the evidence of the repeated harassment that took place against this child at this school after she was sexually assaulted. Now, I won't be discussing all of the facts in the next 15 minutes. That's simply impossible. But it is important to highlight the most pertinent ones insofar as it is necessary to establish a pattern of deliberate indifference. Well, and when you're highlighting, highlight those harassment acts that pertain to the original sexual assault rather than pertaining to a reporting of the assault. That is, harassments, this content or subject of which appears to relate to the original sexual act. Of course, Your Honor, so after this child was assaulted off school campus, she at first was told by a school dean that if she tried to discuss the situation with the perpetrator, she would be disciplined for harassing him. So the focus at that point was on what was going to happen to her rather than to him. And bear in mind, Your Honor, that the school has extensive powers under Colorado state law to not only investigate but actually discipline any conduct not only by the perpetrator himself but also by all friends and acquaintances of the perpetrator who were somehow aware of this assault. Now, when we talk about the harassment that she experienced, she was told that, quote, unquote, consent is a myth by one of the friends of the perpetrator. And this was somehow based on what actually had transpired. She was called, quote, unquote, a dirty slut. Another student had asked her if she wanted to sexually experiment. She was touched without her consent repeatedly. She was told that a few other friends of the student who had perpetrated the assault had actually had a discussion and said that she would be the one to, quote, unquote, lose her virginity first. And then also there was tolerance by the school as to all of these reports. This is not something that the accuser here, that the plaintiff here was keeping to herself. She was actually consistently reporting this. The district court, Judge Moore, concluded that the subsequent harassment flowed from the report of the sexual assault. And I think the one case that both parties seem to focus on is our Siemens case that involved a sexual assault on a male student, similar sex-based comments like boys will be boys and those sorts of things. But anyway, the district court found that Siemens was persuasive that this harassment was not on the basis of sex, at least based on 10th Circuit case law. Could you respond to that? Your Honor, this was a very puzzling finding, actually, by the district court, and it was a conclusory finding. It was one or two sentences in a 17-page ruling that simply said, well, the court concludes that this harassment was based on the report of the abuse or the report of the assault rather than the assault itself. But the district court didn't conduct any kind of an analysis determining or leading up to what led it to make that determination. That certainly was never an allegation of the pleading. That was something that the court found on its own, and it's still a mystery as to why the court made that determination on its own. With respect to Siemens, too, there are some important factual distinctions between Siemens and the matter at bar. First, the court was not permitted to draw the reasonable inference that the plaintiff was treated differently because he was a male because the plaintiff pleaded similar hazing incidents occurred in the female athletic program as well. We didn't have that same level of gender discrimination. And the facts in Siemens consistently drew connections between the harassment and the report of the assault since the football team faced disciplinary sanctions as a result of the plaintiff's report. Now, that was in the pleadings itself. We never drew, or in this case, the plaintiff never actually drew any kind of a connection between the report of the assault and the disciplinary sanctions or lack thereof. Additionally, there were actually disciplinary sanctions for the football team in Siemens. There were no disciplinary sanctions in this particular case. Rather, there were simply conversations with the perpetrator of the abuse and the friends of the perpetrator as well. Didn't the school separate the two students, perpetrator and the victim? Weren't they separated from class and some things of that nature? So the only thing that the school did, well, let me address a few things about that. Number one, the only thing the school did is ensure that they were not, that the perpetrator of the assault and the child were not in the same classroom. But remember, we're not talking about a huge college campus here. We're talking about a high school. Roughly 2,000, maybe 2,200 students in this high school, they could still see each other. Well, you know, we're talking about high school discipline. We sit here as a court. You know, we generally don't second-guess, you know, disciplinary actions except in extraordinary circumstances. And your argument is that these are extraordinary circumstances, that, you know, the East High should have done something different, right, or more. And the fact that they didn't is evidence of deliberate indifference, right? Yes, Your Honor. Why isn't what they did within the range of permissible, you know, not unreasonably egregious responses to the harassment? Sure. First of all, let's bear in mind that they only separated the perpetrator of the assault from the student. But they did not separate the five other students that were highlighted in the complaint who were also engaged in harassment. So they were still in class with her. In fact, at one point, she had received some kind of a, or she was aware of some kind of drawing that had been made from one of these five students that other students had seen too that said she should kill herself. Were the other students ever talked to or disciplined? They were talked to, Your Honor, but they were not disciplined. This leads to the question of whether talking to a student is disciplined. Now, first of all, we don't know how much they actually even talked to them. But then I think this is where a case like the Vance case is actually quite instructive. Because the Vance case made it clear, quote, that minimalist response is not within the contemplation of a reasonable response. More importantly, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. That does not mean it's supposed to actually eliminate the behavior, but it is supposed to take reasonable steps to actually eliminate the behavior. Now, where a school district has actual knowledge, as it did here, that its efforts to remediate are ineffective and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances. Is there? Yes, Your Honor. Is it alleged in the complaint that the plaintiff complained about these five associates of the perpetrator and that nothing was done after she complained? That is correct, Your Honor. That is alleged in the complaint. Yes, Your Honor. What we say here is basically that we have the same pattern that repeats itself over and over again. She alleges harassment. They claim that they will do something. She alleges more harassment. They claim something will be done. She alleges more harassment. They may talk to someone. I'm asking about this because the schools have a tough job in this circumstance because they're also required to give these perpetrators, these associates, an education also. So I'm curious if there's anything about timing that she complained about harassment by student C and there was plenty of time for the, well, in the middle of the school year. Can you move someone out of the class? What are the limits here and how detailed is that explained in the complaint? I'm most concerned about the deliberate indifference element. Sure. So under state law, actually, the school has extensive powers to remove students under suspension for up to 25 days during the school year. Now, there's no evidence that any student here, either the perpetrator or the other students, were removed for even one day. Well, what level of misconduct is required before you can suspend a student and how long does that take? That's a big deal, I suspect. In point of fact, Your Honor, it is not. Actually, the level of conduct is quite low, and I will read from the statute here. It's really quite general. Quote, behavior on or off school property that is detrimental to the welfare or safety of other pupils or of school personnel, including behavior that creates a threat of physical harm to the child or to other children. This child actually had alleged that she was fearful of physical harm. And a suspension can take place instantaneously. You don't have to go through hearings and everything or you're going to get sued by that student? Not suspension, Your Honor. In fact, there is not a right to a formal hearing for a suspension under state law. The only time that a formal hearing would actually be required is for an expulsion. But a suspension, and again, you can go up to 25 days either consecutively or different spots throughout the year, you can actually suspend a student. Here's the thing, though, Your Honor. Again, we're not even suggesting, well, the school has to suspend someone every single time or they had to expel someone. But what we do have to acknowledge is that there was no actual discipline that took place. All they really did is talk to these students, which provided no disincentive for them to continue to engage in this kind of behavior. The school also alleges that they provided counseling to the victim. Well, that's all well and good, Your Honor, but that does nothing actually to protect her. All that is supposed to do is condition her to somehow emotionally deal with the impacts of the harassment that she is having to endure. Did she allege that the school promised that they would do certain things that they didn't do? I mean, the one I remember is putting notes in these harassers' files, and she alleged that wasn't done. But did she allege that the school promised they would talk to various people but didn't do so, or was that not in the allegations? I cannot recall, Your Honor, if that is in the allegations, but I think it's important here to consider who is actually in charge of discipline at the school and who simply is the victim here. I don't think that the school or the child here is necessarily in a position to understand all of the disciplinary tactics and techniques of the school. No, I'm just ‑‑ we're dealing with a motion to dismiss. We're limited to the allegations and the complaint. Sure. I just wanted to see what she alleged the school board failed to do. I think what the school board failed to do, Your Honor, or what the school failed to do is take reasonable steps to actually stop the harassment. Did she allege what those reasonable steps should be? Well, I think the reasonable steps would be something that actually involves ‑‑ No, Your Honor. She did not. But at this point, actually, when we talk about being deferential to the school, by all means, we should be deferential to schools on discipline. But a failure to exercise discipline at all is something that is deeply problematic. She does allege that. Yes, correct. And nobody is saying here that the school should have used, immediately taken all six of these students and expelled them from school. Okay? What we are saying is that they should have taken reasonable steps. And if you know that talking to the students repeatedly does nothing, and these are the same group of students, bear in mind, Your Honor, then at that point you've got to escalate the discipline somehow. Are standards going to be a clearly unreasonable response? Is that the deliberate difference standard that we apply here? Your Honor, I've never seen the words clearly unreasonable. What I am aware of is the term is, as I see it from the Vance decision, is that the school district has the responsibility to act reasonably in light of the known circumstances. Which case was that? The Vance decision, Your Honor. Now, the known circumstances here were the harassment that she was experiencing over a 15-month period. Now, if every time she goes in there, they tell her the same thing, which is just that we're going to talk to the students, and then she comes back again and says, look, it happened again. They say, well, we'll talk to them. It happened again. We'll talk to them. At some point, the only thing that we're saying is that the school has got to do something more than just talk. Nobody is asking the court to step in and say, this is what you have to do in these disciplinary situations. What we are asking the court to do is say, well, you have these rules on the books. You are authorized to use them. And in light of the circumstances, you should. I know your time has expired, but could you clarify the status of the individuals? Is the only claim that's left in the case the Title IX claim against the school? No, Your Honor. The case has been dismissed entirely. Okay. So did you appeal individual liability? No, Your Honor. We did not. We are not pursuing at this point any claim against any individuals. We are pursuing the claim against the school district. Okay. Just the Title IX claim? Yes, Your Honor. Thank you. Thank you. Let's hear from the school district. Ms. Ortiz? May it please the court, my name is Holly Ortiz. I'm here on behalf of Appellee School District No. 1 in the city and county of Denver. This appeal is before the court today in a Title IX case, which was dismissed pursuant to the Rule 12b6 motion filed by the district in this case. There are generally three issues on appeal. Deliberate indifference, which we've already been discussing, as well as did the district court correctly determine that Ms. Stowe did not plead facts demonstrating that she was subject to severe pervasive and objectively offensive harassment that denied her access to educational opportunities, and third, did Ms. Stowe fail to plead facts sufficient to show that she was subject to harassment based on her sex. And I want to start with deliberate indifference since that's where we left off just a few minutes ago. The standard for deliberate indifference is indeed clearly unreasonable. In order to state a claim for deliberate indifference, a plaintiff must show that the response to her complaints was clearly unreasonable. This court held that in the Ross decision. It's also in the Davis decision, and I believe it is quoted in the Siemens decision. In Ross, this court said that the standard is that the response must be clearly unreasonable, simple, or even heightened negligence will not suffice. In Davis, Davis specifically said it is not a mere reasonableness standard. With kids engaging in inappropriate speech, name-calling harassment is not actionable. It has to be clearly unreasonable in light of the known circumstances. We have 18 months or so of conduct that's alleged to be sex-based harassment and little or no discipline of either the perpetrator or the clique of students that are making these statements. Why doesn't that plausibly allege clearly unreasonable response to sex-based harassment? Well, I think this is where the timeline issue does become important. One of the reasons it becomes important, per the allegations in the complaint, Ms. Doe complains on March 14, 2016, that she was sexually assaulted. She talks to a dean. The district's response to that is immediate and clearly reasonable. The dean takes her to a school psychologist. The psychologist interviews her. They contact her parents. They inform her parents. They inform her parents that they can file a police report if they choose to. They decline, stating we don't want to ruin the boy's life. Let me just focus a bit. We're dealing with just the allegations in the complaint. Correct. I was struck. I don't know what happened. I don't know what the school did or not, but we're never going to find out that if this is affirmed. So I'm dealing just with the allegations. I'm not saying it happened. But the allegations allege that the school board was almost entirely acting on the victim, telling the victim how she could cope with these problems. And the allegation is that there was very little done against the alleged wrongdoers and particularly against the wrongdoers that supported the person of the original perpetration. So just dealing with the allegations in the complaint, there was this allegation that there was a continuing over two years escalation. Isn't there a duty to ratchet up your response when history shows that your prior responses are not effective? You are correct. But in this case, again, the timeline is important. She complains on the 14th. The district takes action. Talking to her. Talking to her. Talking to her. And they instituted a no contact order. And they talked to both students. She was talked to about it a second time. To the perpetrator. Right, right. Not to these other people. No, because there hadn't been any allegations about them yet. So what allegations in the complaint were about activities the school imposed on these five alleged taunters? So the allegations are, she complains, they counsel her, they institute the no contact order. She complains about generalized student fallout of student friendships. So they provide counseling on how to handle that. To her. To her. Because she's complaining about the fallout of school friendships. There's a million things we could talk about, but your time is short. And I just want to focus on one thing. I'm not saying it's this positive or the only thing. But I'm just looking at her allegations as to what the school district did to the taunters. And I think that she basically alleged essentially very little, if anything, was done as to them. You can repeat, oh, they talked to her. They had counseling for her. They told her this, this. How she could cope. How she could do this. But that's not the issue, really. Well, and the point I'm trying to get to is the timeline here. They take these actions for about two weeks after her initial complaint. She makes complaints about generalized fallout. They take the actions they did, which did include talking to the perpetrator. He's the only one alleged at this point other than the fallout of friendships. Does the complaint allege that they did anything other than that? No. That's okay. But then she doesn't. So she's dealing with the complaint. The only thing that she's alleged the school board did was to issue a no-contact rule with the accuser. And that's it as to everybody else other than how she could cope with the problem. No. Okay. What else was there? Well, after they issue that, there is no further contact with student one. She doesn't make another complaint until the next school year. At that point, they talk to her and they talk to her. When during the school year? So the complaint of the assault took place during the 15-16. You said the next school year. Right. Was it in September? It was September 1st of the next school year. That's her next complaint. She was meeting with the counselors and talking to them, wasn't she, in that first school year? But it was not related to any harassment. It was fallout of friendships. She was talking about how she was being continually harassed and problemed. During the first year, she was talking to the counselors about fallout of friendships, which she does, tied directly to her report. Do you agree that if she was telling the counselors that she was continuing to face these problems and was anxious and having psychological problems, that that was the same as notifying the school of the problem? No, I do not agree with that. Do you think that what she told those counselors is not legally telling the school? Telling it because I think there is case law that says that a counselor is not an appropriate person. What case law is there on that? I'm not going to be able to give you the case law off the top, but it's case law that talks about in a Title IX complaint who the appropriate people are. But the appropriate people told her to go to the counselor. Right, they did direct her to the counselor. You are correct. In her first year, did she complain about anyone being harassed? I'm confused here. Sure. She said she lost friends. Right. Did she complain to the counselor that anyone was harassing her? She complained to the counselor that she was experiencing peer backlash and the fallout of relationships due to her report of Student One. And she made one comment, and that was that somebody told her they took the vote and she would lose her virginity first. Did she name any people, any specific people? No, she did not. She said the boys. At that point, they talked to Student One's friends because she said Student One's friends. There were no further complaints of that harassment until the next school year, months later. She complains on September 1st of, again, peer backlash and the fallout of friendships. She doesn't complain of sexual harassment. At that point, they counsel her on how to handle peer backlash and friends. She doesn't complain again until November 29th. At that point, we have more complaints about peer backlash and the fallout of friends. Again, she ties it directly to her report. She does not tie it to her gender. When you say doesn't tie it, you're talking about in the complaint. You're not talking about school records or anything like that. I'm talking about the allegations in the complaint. The allegations in the complaint, for example, she alleges that she was experiencing peer conflict. She says this was a clear indication EHS received that Doe was experiencing retaliation at school based on her rape report. She complained of fallout of friendships and said she regretted talking to the school. She makes the claim that this district retaliated against her. She says everyone got mad at me for reporting Student One. She repeatedly ties it to her report. She does some of that, but I'm looking at paragraph 51. I was bullied as a result of the rape, not the report of the rape, but the rape. Paragraph 57, I got rape jokes. Paragraph 59, I was called a dirty slut. Paragraph 59, I was asked if I wanted to sexually experiment. Paragraph 43, you will lose your virginity first. And in paragraphs 27 and 73, all relate to the rape and not to the report. Now, there were certainly matters relating to the report, too. But each of these events refer to tauntings pertaining to the original sexual effect. And that distinguishes this case from Simmons, which dealt only with the reporting and not at all with the original offense. So those instances that you're talking about, the school talks to the kid. The one comment before the spring of 2017 is you'll lose your virginity first. The school goes, talks to the kid, reprimands him. Nothing like that occurs again for a year. The school talked to the student who said about the virginity comment. Right. When was that? That was in the spring of 2016. Okay. And nothing like that again happened, you're saying, until the spring of 2017? Correct. All the allegations between that time are these allegations of general bullying and harassment based on the fallout of our friendships, that kind of thing. The specific allegations that you're addressing of the rape jokes, the pushing the girl down and calling her a dirty slut, that occurred after January. After she reported student three, a different report on a different student, student three, reported him for blackmailing her in January 2017. That's when those comments occurred. At that point, it was not unreasonable, it was not clearly unreasonable, given that the first time the district talked to the perpetrators, the harassment of a sexual nature stopped for a year. It was not clearly unreasonable for the district to talk to the student again. In addition to that, the district did a safety plan for Jane Doe. They conducted two suicide risk assessments when people informed them that there was concerns about her. Neither one came back high for a suicide risk. They even at one point offered her a transfer to another school if that's what she wanted to do. She didn't want to do that. They took a myriad of options. They investigated her complaints. They kept her parents informed. And they did talk to these boys, and it was not clearly unreasonable for them to do so when it worked the first time. And did it work the second time? Based on the timeline, I would say yes, it did. She alleges comments in January and in April and then nothing again until her parents say, we want to withdraw her from school. And that was in May. That was in May. Let me ask for clarification. There was apparently some compromising pictures that were mentioned. Your brief implies that those were pictures, nude pictures of her. But I thought the record or the allegations in the complaint, which is what we're dealing with, did not suggest that these were pictures of her at all. So I'm wondering if that was not a correct insinuation in your brief that these were pictures of her. Because I didn't see anything in the complaint that pertained to that. You are correct. That is not in the complaint. And so your allegations in the briefing that these were pictures of her, you'll correct that, or at least that was not an accurate representation. Of what is in the pleading, correct. But I thought, I was curious about that, too. I thought the pleading referred to the report, which was attached to the complaint. And the report mentions this. The pleading makes two statements. It says that she makes a safe-to-tell report about blackmail by student three. And then it makes an allegation that the police talked to her and told her she couldn't do that. The reasonable inference is that it's something she sent to student three. But am I wrong that the complaint referred to a report? The complaint refers to the safe-to-tell report, which does contain that information, yes. But that report doesn't. Was that attached to the complaint? I don't believe it is, no. And does that report establish that the nude photograph was of this complainant rather than someone else? Yes, it does. It does. And I thought you argued in district court that you could use that report in a motion to dismiss on the pleadings because it was a document referred to in the complaint. We did argue that. That became a very, that was a difficult thing to include because it also included the pictures, which we are not going to submit to anybody. And did the court allow, was there? The court didn't rule on that piece at all. The court ruled on the retaliation, the complaints being retaliation, as opposed to addressing what was in the safe-to-tell report. So as best we can tell, the report was not relied on by the district court in its Title IX decision. Correct. Counsel, your time has expired. We appreciate the arguments. Counsel are excused and the case shall be submitted. The court will take a recess.